## ROSIER *v.* NICHOLS.

In January, 1874, Samuel Pearson conveyed certain land to Doris, trustee, "for the sole and separate use of " the wife of the grantor, Mary Pearson, " for and during her natural life, and after her death to such child or children by [the grantor] as she may leaving surviving her at her death, share and share alike ; with power to the said Mary Pearson to empower the said Doris or his successors in the trust, by writing under her hand, to sell any part or

the whole of said trust estate and to reinvest the proceeds in such other property, subject to the above-described trusts, as he or his successor or successors may deem most to the interest of said trust estate, without the aid or intervention of any court whatever being necessary. And with power also to the said Mary Pearson, if she shall die leaving no child or children by [the grantor] living at the time of her death, to limit and appoint by her written will and testament, properly proven and executed, the use of said property to whomsoever she may see fit;" and with power also to Mary Pearson to appoint another trustee in case of a vacancy, the trustee so appointed taking under and subject to the trusts limited in the deed. The original trustee died in 1890. Mary Pearson in 1899 conveyed all her right, title, and interest in the property described in the trust deed to the remaindermen, who were of full age. Subsequently, in 1904, Mary Pearson nominated C. T. Talbert as trustee to succeed Doris, and empowered him to exercise the power of sale conferred on the original trustee; and the new trustee, under the power of sale, sold and conveyed the land to The Planters Loan and Savings Bank. *Held:* (1) The power of appointment by the life-tenant of the whole estate by will was extinguished by the alienation by the life-tenant of her title in the land to the remaindermen. (2) The power of sale given to the trustee upon the written power of the life-tenant was extinguished by the union of the estate for life with the remainder in fee. (3) The deed from Talbert, trustee, conveyed no title to the bank.

Argued April 19, — Decided May 13, 1905.

Petition for injunction. Before Judge Hammond. Richmond superior court. March 23, 1905.

On February 10, 1905, J. Mumford Rosier presented for sanction, to the judge of the superior court of Richmond county, an equitable petition in which the following facts were recited: In the month of January, 1874, Samuel Pearson conveyed to Patrick Doris, as trustee, his successors and assigns, the fee-simple title to certain property, including a designated tract of land lying in Richmond county, to be held in trust "for the sole and separate use of" the wife of the grantor, Mary Pearson, "for and during her natural life, and after her death to such child or children by [the grantor] as she may leave surviving her at her death, share and share alike; with power to the said Mary Pearson to empower the said Doris, or his successors in the trust, by writing under her hand, to sell any part or the whole of said trust estate and to reinvest the proceeds in such other property, subject to the above-described trusts, as he or his successor or successors may deem most to the interest of said trust estate, without the aid or intervention of any court whatever being necessary. And with power also to the said Mary Pearson, if she shall die leaving no

child or children by [the grantor] living at the time of her death, to limit and appoint by her written will and testament, properly proven and executed, the use of said property to whomsoever she may see fit; and with power also to the said Mary Pearson, by her own writing under her own hand and seal, to appoint and choose another trustee instead of the said Doris, shall he wish to resign said trust or shall die leaving the same unfulfilled or shall remove out of the limits of this State, said trustee so appointed taking under and subject to the trusts herein limited, without, in such new appointment, invoking or needing any aid or intervention of any court of this State." The trustee, Patrick Doris, died in the year 1890, leaving Mary Pearson in possession of the property. After his death, and while the office of trustee was vacant, she and her children, all of whom were of age, executed a conveyance which contained the following recitals: " Whereas Mary Pearson, of said county, has a life-estate with remainder to her children in the real estate hereinafter described [being the tract of land above mentioned], and is desirous of conveying her life-estate in the same to them, . . they being her only children, and all of said county; and whereas the said children wish to divide the said property as nearly equally as possible among themselves: now, therefore, this indenture made this eighth day of November, eighteen hundred and ninety-nine, between the parties, witnesses: that the said Mary Pearson, for and in consideration of the natural love and affection she bears to her said children, and for and in consideration of one dollar by them to her, the receipt of which is hereby acknowledged, at and before the sealing of these presents, has given, granted, bargained, sold, and conveyed, and by these presents does give, grant, bargain, sell, and convey unto them, the said James W. Pearson, Francis E. Talbert, and Horace C. Pearson, all her right, title, and interest in and to" said tract of land. Subsequently one of these children, Francis E. Talbert, on November 15, 1901, conveyed to John D. Sheahan the portion of the land she acquired under this deed, for the purpose of securing a loan made to her, which conveyance contained a power to sell the land therein described, in the event she made default in paying any of the notes evidencing the loan. On January 6 of the following year John D. Sheahan entered a transfer on the back of this conveyance, reciting that he thereby assigned all his

interest in the security deed, and the notes to secure which it was given, to Horace P. Nichols. Thereafter, on November 1, 1904, Mary Pearson, pursuant to the power in the trust deed, appointed Clarence T. Talbert to fill the office of trustee, made vacant by the death of Doris. On the same date Talbert, as trustee, and Mary Pearson, executed a conveyance to The Planters Loan and Savings Bank, covering the tract of land described in the trust deed, reciting in this conveyance that they were exercising the powers conferred upon them by the deed of trust. The sale of the land by the trustee was really made to plaintiff, the deed being made to the bank to secure it for money advanced to plaintiff with which to make the purchase, and actual possession of the land being surrendered to plaintiff by the trustee and Mary Pearson. The bank, at the time of the sale, required it to be ratified and confirmed by Francis E. Talbert, who conveyed whatever interest she had in the land to the bank. On February 10, 1905, the bank conveyed the land to the plaintiff, who on that date became the absolute owner of it, as against the bank. The plaintiff in his petition alleged that by virtue of his purchase from the trustee he acquired title to the land ; he denied that Nichols acquired any title to the land under the transfer indorsed by Sheahan on the back of the security deed to him from Francis E. Talbert, and asked that Nichols and his attorney at law, Frank W. Capers Jr., be enjoined from attempting to sell the land, as they had advertised it was their intention to do, under the power of sale contained in the security deed. The plaintiff further prayed that Nichols be required to appear in court and litigate with him as to who has the legal title to the property, and as to the validity of the power of sale which Nichols was undertaking to exercise. The judge sanctioned the plaintiff's petition and granted a temporary restraining order. On the interlocutory hearing for an injunction no evidence was offered, but the case was tried on the petition and a general demurrer interposed thereto by the defendants. The court, after hearing argument, held that the plaintiff had no title as against Nichols, and refused to grant an injunction. To this judgment exception is taken.

*W. K. Miller*, for plaintiff.   *F. W. Capers*, for defendant.

EVANS, J. (After stating the facts.)   The deed from Samuel Pearson to Patrick Doris, trustee, created a trust estate for the

life-tenant, which became immediately executed upon the delivery of the deed, and a legal estate in the remainder to the surviving children of the life-tenant.  *Tillman* v. *Banks,* 116 *Ga.* 250 ; *Stiles* v. *Cummings,* 122 *Ga.* 635.  The life-tenant was given the power of disposition by will in the event only there should be no child or children of the life-tenant, begotten by the grantor, in life at the death of the life-tenant.  The life-estate was not changed by this power of appointment by will in the specified event, but it still remained an estate for life, with power to devise by will in a certain contingency.  No estate was conveyed to the trustee, but the deed did vest in the trustee a power to sell the entire property conveyed, upon the conditions annexed to the power.  A power of sale may lawfully reside in one who has no legal or equitable interest in the property which is to be the subject-matter of the sale.  *Coleman* v. *Cabaniss,* 121 *Ga.* 281, and cit.  Such a power is *simply collateral,* and the person to whom the power is given has no interest in the land ; neither is any estate given to him.  4 Kent's Com. *317.  By this deed Doris was only the trustee of a power of sale exercisible by compliance with the prescribed terms. *Heath* v. *Miller,* 117 *Ga.* 857, and cit.

Having construed the deed, it now becomes necessary to discuss whether, under the facts alleged in the petition, the power of sale had been extinguished when Talbert, trustee (who was the successor to Doris, trustee), attempted to exercise it by the conveyance to The Planters Loan and Savings Bank.  Mrs. Pearson, the life-tenant, on the arrival at majority of her children, conveyed to them " all her right, title, and interest " in and to the land described in the trust deed.  By the same conveyance the land was partitioned between the remaindermen.  The deed from Mrs. Pearson to her children divested her of the power of appointment of the estate by will in case the remaindermen died before she did.  The life-tenant's power of appointment of the estate by will was a power *in gross.*  The alienation of the life-estate by the life-tenant extinguished this power (4 Kent Com. *346), and the remaindermen were vested with the whole title.  When the remaindermen became clothed with the life-estate, the merger of estates was complete, and they became the owners of the entire estate in fee simple.  The power of sale given to the trustee could not be exercised after the union of the estate for life with the

remainder in fee.    Wolley *v.* Jenkins, 23 Beav. 53.    By parting with her life-estate Mrs. Pearson not only lost the power of disposition of the property by will, in the happening of the contingency named in the deed, but she also lost the power to authorize the trustee to sell the trust estate for reinvestment.

Aside from the technical rules of construction, a deed should be construed to effectuate the grantor's intention as expressed in the instrument.    It is not conceivable that the grantor intended that his wife should affect to sell the land after she had parted with all title therein.    There are no words in the conveyance restraining alienation by the wife of the estate granted to her.    She was an adult when the deed was executed, and no trust could be created for her benefit.    Her estate was a legal estate, with no inhibition against her disposing of the same according to her own free will.    Courts must determine the legal effect of a conveyance, and the intention of the grantor must be taken in harmony with, and not in contravention of, the rules of law.    Perhaps the grantor may not have contemplated a conveyance by the wife or her life-estate.    Be it so, the clear import of the whole instrument was that the power of sale was to be exercised for the benefit of the wife with respect to her interest in the property, and the disposition of her interest destroyed the grantor's intent and extinguished the power.

We therefore hold that the effect of the deed from the life-tenant to the remaindermen was to extinguish the power of sale of the trustee as expressed in the trust deed, and consequently no title passed to the bank by virtue of the deed from Talbert, trustee, to The Planters Loan and Savings Bank.    The bank having no title to convey, its grantee, Rosier, had none; and it is of no concern to him whether or not the defendant was acting within the scope of his legal rights in advertising for sale under a power a part of the land which had been conveyed by one of the remaindermen to secure a loan of money.    There was no error in refusing the injunction.

*Judgment affirmed.    All the Justices concur, except Candler J., absent.*